IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| VERNON RICHARDSON, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No. 04-0351-CV-W-RED |
| | ) | |
| BOARD OF POLICE COMMISSIONERS | ) | |
| OF KANSAS CITY, MISSOURI, through | ) | |
| its members, KARL ZOBRIST, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Now pending before the Court is Defendant Chirnside's Motion for Summary Judgment (Doc. 84), Plaintiff's Suggestions in Opposition to Defendant Chirnside's Motion for Summary Judgment (Doc. 95) and Defendant Chirnside's Reply in Support of Motion for Summary Judgment (Doc. 96). After considering the merits of the matter before it, the Court finds that there is no genuine issue of material fact and that summary judgment in favor of Defendant Chirnside is due to be **GRANTED** on all state and federal claims contained in Counts I - V of Plaintiff's Petition (Doc. 1). With respect to Plaintiff's Count VI, Defendant's motion for summary judgment as it pertains to Defendant's in-court testimony is **GRANTED**, and any remaining claims for slander contained in the police report are **DISMISSED without prejudice.**

### I. Factual and Procedural Background

On February 20, 2002, at approximately 2:35 p.m., Plaintiff Vernon Richardson ("Plaintiff") was observed by Officer Brad Chirnside ("Defendant") of the Kansas City, Missouri Police Department, leaving Hilltop Apartments and proceeding north on Topping Street. Defendant began

following Plaintiff without the use of his emergency equipment, and proceeded to conduct a computer check on Plaintiff's car license plate number 189PNM. Shortly thereafter, Defendant's computer reported that license plate number 189PNM was registered to Vernon Richardson, black male, approximately forty years old, who had an outstanding "pick-up" warrant for common assault and was a code "10-31." A code "10-31" means armed and dangerous. Based on his personal observation of the driver being a black male around forty years old, and driving the vehicle with the license plate 189PNM, Defendant determined that the driver of the vehicle matched the information provided by the computer and was most likely Plaintiff Vernon Richardson. At approximately 2:38 p.m., Defendant initiated his emergency equipment and pulled Plaintiff over near the intersection of 17th and Hardesty Streets. After the stop, Plaintiff conducted a radio dispatch car check on license plate number 189PNM.

Defendant then approached the car and requested Plaintiff to verify his name at which time Plaintiff confirmed that he was Vernon Richardson. Defendant then asked Plaintiff to exit the vehicle and placed him under arrest for the outstanding warrant. Plaintiff was then escorted to the trunk of the car where Defendant searched Plaintiff's person. Defendant then proceeded to search the front seat area of the car, where he located a loaded .38 caliber pistol shoved down between the seat cushion and console.

Based on information provided by Defendant and an interview with Plaintiff on February 20, 2002, Detective Michael Foster swore out a statement of probable cause for possession of the pistol in order to bring felony gun possession charges, as Plaintiff had three previous felony convictions. After processing this information, a statement of probable cause was forwarded to the Jackson County Prosecutor, whereupon a felony warrant was issued for Plaintiff's arrest. On about April

10, 2002, he was arrested pursuant to this warrant. Plaintiff was appointed a public defender, who filed a discovery request seeking any type of photographic or electronic surveillance related to the February 20, 2002, stop. The prosecution responded on October 4, 2002, stating that no photographic or electronic surveillance was conducted with regard to the initial stop.

Plaintiff proceeded to file a motion to suppress certain evidence and on October 17, 2002, a suppression hearing was held before the Honorable John Gray. At this hearing, Defendant testified about his stop and arrest of Plaintiff and included in his testimony that he had run a warrant on Plaintiff's license plate two days prior to the stop on February 20, 2002, and confirmed the warrant via the computer terminal in his vehicle. He further testified that on February 20, 2002, he observed Plaintiff's vehicle roll through a stop sign and initiated his emergency lights in order to conduct a stop. Defendant claims that Plaintiff was slow to pull the car to the curb and upon doing so, Plaintiff hurriedly exited the car, placed his keys in his pocket and locked the door. Based largely on the testimony of Defendant at the hearing, Plaintiff's motion to suppress was denied.

On November 6, 2002, Plaintiff's counsel learned that there was in fact a videotape recording made of Plaintiff's initial arrest by Defendant. Upon viewing the tape, it was determined that much of Defendant's testimony about the surrounding circumstances at the time of the arrest had been fabricated. This included his testimony that Plaintiff had run a stop sign, that he had failed to stop for the officer, that he had hurriedly jumped out of his car and locked the doors and that he had made other furtive movements. Based on Defendant's false testimony, Judge Gray determined that Defendant was "unworthy of belief" and sustained Plaintiff's motion to suppress.

Plaintiff then proceeded to file this case in the Circuit Court of Jackson County, asserting six Counts against Defendant pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights

under the Fourth, Sixth, Eighth and Fourteenth Amendments, as well as pendant state law claims for conversion, false imprisonment (two counts), malicious prosecution and slander. Additionally, Plaintiff named the Board of Police Commissioners of Kansas City Missouri (hereinafter "Board"), and its members, in their official capacity, alleging violations of § 1983 for "fail[ing] to instruct, supervise, control, and/or discipline, on a continuing basis, Defendant Chirnside in the performance of his duties." (Doc. 1) On April 20, 2004, this case was removed to federal court on the motion of Defendant Board.

In response to Plaintiff's petition, Defendant Board filed a Motion to Dismiss on the Basis of Eleventh Amendment Immunity (Doc. 31), which was granted by Order of the Court on October 6, 2005. (Doc. 83) Pursuant to a previous Order of the Court (Doc. 76), Defendant was granted additional time in which to file a motion for summary judgment. Defendant then timely filed the instant motion for summary judgment with the Court on October 27, 2005.

## II. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fry v. Holmes Freight Lines, Inc.*, 72 F. Supp. 2d 1074 (W.D. Mo. 1999). When ruling on a motion for summary judgment, the court should view the facts in the light most favorable to the adverse party and allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *See id.* (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970)); *Reed v. ULS Corp.,* 178 F.3d 988, 990 (8th Cir. 1999)).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could

-4-

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The evidence in favor of the nonmoving party must be more than "merely colorable." *Id.* When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (footnote omitted).

### III. Discussion

In this case, Plaintiff brings six Counts against Defendant. Count I alleges a 42 U.S.C. § 1983 violation of his Fourth and Fourteenth Amendment rights to be free from unlawful search and seizure stemming from Plaintiff's traffic stop and arrest on February 20, 2002. Count II is a claim for conversion based on alleged § 1983 violations of Plaintiff's Fourth and Fourteenth Amendment rights as well as a pendant state law claim for Defendant's taking possession of the gun and vehicle following Plaintiff's arrest. Count III is a false imprisonment claim based on alleged § 1983 violations of Plaintiff's Fourth and Fourteenth Amendment rights as well as a pendant state law claim stemming from Plaintiff's arrest on February 20, 2002. Count IV is an additional false imprisonment claim based on alleged § 1983 violations of Plaintiff's Fourth, Sixth and Fourteenth Amendment rights as well as a pendant state law claim stemming from Plaintiff's felony arrest on April 10, 2002. Count V is a claim of malicious prosecution based on alleged § 1983 violations of Plaintiff's Fourth, Sixth and Fourteenth Amendment rights as well as a pendant state law claim stemming from Plaintiff's subsequent prosecution for the felony gun charge. Finally, Count VI alleges a pendant state law claim of slander against Defendant for making a false police report and giving false testimony on several dates about Plaintiff's behavior on the occasion of February 20,

2002.[1]

It is undisputed that in order to establish a claim under 42 U.S.C. § 1983, a plaintiff must show a deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Durham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999). With respect to Plaintiff's Counts I through V, the Court finds that the only constitutional question at issue is whether Defendant's traffic stop of Plaintiff on February 20, 2002, followed by a subsequent arrest and search incident to arrest were violative of Plaintiff's Fourth Amendment right to be free from unlawful search and seizure. With respect to Plaintiff's state law slander claim in Count VI, the court need only consider whether Defendant's statements were protected by absolute immunity or otherwise privileged. The Court will separately consider Plaintiff's federal complaints contained in Counts I-V first, followed by Plaintiff's pendant state law claims in Counts II - VI.

*A. Plaintiff's § 1983 Claims (Counts I - V)*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. The Fourth Amendment was later incorporated to the states through the Fourteenth Amendment. *Wolf v. Colorado*, 338 U.S. 25 (1949), overruled on other grounds by *Mapp v. Ohio*, 367 U.S. 643 (1961). The act of stopping an automobile and detaining its occupants constitutes a seizure. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *U.S. v. Owens*, 101 F.3d 559, 560 (8th Cir. 1996). "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). A police officer may

---

[1] Plaintiff's complaint also contained a seventh count, which alleged § 1983 violations against the Board for failure to supervise, control and otherwise discipline Defendant. This Count was previously dismissed by a Court order on October 6, 2005. (Doc.83)

-6-

stop an automobile if he has "reasonable suspicion" that the occupant of the automobile is subject to seizure for violation of the law. *Owens,* 101. F.3d at 560 (citing *Prouse*, 440 U.S. at 663). The existence of reasonable suspicion is a question of law. *Owens*, 101 F.3d at 560. A police officer has reasonable suspicion sufficient to make a stop without a warrant if the police officer can point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968).

Here, Plaintiff argues that there was not reasonable suspicion justifying a stop of Plaintiff's car because the evidence presented by Defendant is unreliable. Specially, Plaintiff argues that the computer printout showing that Defendant conducted a computer check of Plaintiff's license plate at 2:35 p.m. and the transcript of Defendant's radio conversation at 2:38 p.m. cannot be considered as evidence because the documents are in disarray and their accuracy is open to question. Therefore, Plaintiff, citing *State v. Norfolk*, 966 S.W.2d 364 (Mo Ct. App. 1998), argues that there was no "reasonable suspicion" justifying a stop of Plaintiff's vehicle because Defendant based his initial stop off a dispatch report which he failed to verify with sufficient reliability of illegal activity.

When a properly supported summary judgment motion is made, a non-moving party may not merely rest on his pleadings, but must come forward with evidence showing that a genuine issue of material fact exists. *See, e.g., Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984); Fed. R. Civ. P. 56(e). Plaintiff has not done this. Instead, he merely presented the aforementioned conclusory arguments challenging the reliability of the computer printouts and audiotape transcripts without citation to any evidence on the record. This Court has reviewed the tape records and finds that they are self explanatory, the relevant parts are not dependant on any testimony of Defendant, and there is no reason to question their accuracy. Since "[m]ere arguments or allegations are insufficient to

defeat a properly supported summary judgment," *F.D.I.C. v. Bell*, 106 F.3d 258, 263 (8th Cir. 1997), the Court deems the events surrounding Plaintiff's stop on February 20, 2002 as presented by Defendant pursuant to Rule 56(e) and not contradictory to any citation to evidence by Plaintiff as true.

Taking into account all the facts in the record surrounding Plaintiff's stop on February 20, 2002, it is apparent that Defendant had reasonable suspicion to justify a stop of Plaintiff's automobile. Defendant ran a computer check of Plaintiff's license plate and was advised that the owner of the automobile with license plate 189PNM was Vernon Richardson, a black male, approximately 40 years old, who was wanted for an outstanding assault warrant and considered armed and dangerous. Such random license plate searches have no impact whatsoever on the rights of the driver, as no person possesses a privacy interest in their license plates. *United States v. Walraven*, 892 F.2d 972, 974 (10th Cir. 1989). *See also United States v. Sparks*, 37 F.Appx. 826, 829 (8th Cir. 2002) (unpublished opinion citing *Walraven*). Defendant could see that a black male was operating the vehicle and, as one would expect of any reasonable officer in Defendant's position with this information, he activated his emergency lights to stop the vehicle. It is undisputed that immediately upon approaching the stopped vehicle Defendant confirmed with Plaintiff that he was Vernon Richardson.

Clearly, most police officers faced with similar facts would have felt justified in stopping Plaintiff based on these facts and observations. As such, Defendant's stop was supported by sufficient reasonable suspicion that the occupant of the vehicle was Vernon Richardson, who had an outstanding warrant for assault.

Indeed, the very same facts supporting a finding of reasonable suspicion are also strong

enough to meet the higher standard of probable cause justifying Plaintiff's arrest. Probable cause exists if "at the moment the arrest was made ... the facts and circumstances within [a police officer's] knowledge and of which the [officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the person arrested committed the crime with which he was actually charged." *Pace v. City of Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). As previously discussed, Defendant had information that Plaintiff was wanted on an outstanding "pick-up" warrant for assault. Furthermore, Defendant based his stop on observations and facts indicating that it was Vernon Richardson who was operating the vehicle. Therefore, it is apparent that probable cause existed for Plaintiff's arrest on the outstanding assault warrant.

Plaintiff does not contest the validity of the outstanding arrest warrant or the description of Plaintiff as armed and dangerous. However, Plaintiff does argue that the search of the vehicle that uncovered the handgun was unlawful. Plaintiff states that assuming, *arguendo*, that the stop and arrest were lawful, the police still lacked probable cause to search the car because once Plaintiff had been arrested on the outstanding warrant, the reason for the stop had concluded. He takes issue with Defendant's view that the search was incident to arrest. Plaintiff claims there was no threat to the police officer's safety since Plaintiff had been handcuffed and moved to the rear of the vehicle, and the interior area of the car that was searched was not in Plaintiff's immediate area of control.

Plaintiff's argument is without merit. Defendant correctly points to the holding in *New York v. Belton*, 453 U.S. 454 (1981), which states that a police officer may, contemporaneous to the arrest of an occupant of a vehicle, search the area within the "immediate control of the arrestee," including the passenger compartment and all containers found therein. *Id.* at 466. Despite Plaintiff's

-9-

Case 4:04-cv-00351-RED   Document 101   Filed 01/10/06   Page 9 of 18

contentions, it is well established that an officer may order the driver out of the vehicle prior to performing a full search of the passenger compartment pursuant to a custodial arrest. *Knowles v. Iowa*, 525 U.S. 113 (1998). Furthermore, the warrantless search may occur even if the occupants are handcuffed. *See U.S. v. Wesley*, 293 F.3d 541, 549 (D.C. Cir. 2002). Therefore, the Court finds no reason to depart from the bright line holding in *Belton.* Defendant's search of Plaintiff's car and resulting discovery of the gun was a lawful search incident to Plaintiff's arrest.

The Court is well aware of the disgusting conduct of Defendant related to the untruthful embellishment of the facts that occurred in the preparation of his police report and in subsequent testimony before the state court. The simple fact is that there were sufficient legitimate reasons for the stop, arrest, search and seizure as set forth above. Therefore, there is no constitutional violation that will support the § 1983 action. Plaintiff has received relief in the state court by having the gun charge dismissed.

Having concluded that Plaintiff's stop, arrest, search and seizure were legal, the Court finds that there was no constitutional violation of Plaintiff's Fourth and Fourteenth Amendment rights. As previously stated, a § 1983 action provides a remedy only for violations of rights secured by federal statute or the Constitution. *Durham*, 195 F.3d at 1009. Therefore, the Court finds that summary judgment in favor of Defendant on Plaintiff's Count I is due to be **GRANTED.**

Plaintiff has claimed in Counts II through V alternative forms of § 1983 relief based on pendant state law tort claims for conversion, false imprisonment (two counts) and malicious prosecution, respectively. However, the Court fails to see how any of these claims are based on a constitutional violation separate from that of Plaintiff's already decided Fourth Amendment Claim. Essentially, Plaintiff contends that relief is warranted under these charges because they flowed from

Defendant's actions in falsifying his police report and subsequent testimony based on that report, in violation of Plaintiff's Fourth, Sixth, Eighth and Fourteenth Amendment rights.[2]  Certainly, the Court does not wish to condone the acts of Defendant throughout Plaintiff's criminal proceedings leading to the instant litigation.  However, the Court is of the opinion that having found that the stop, arrest, search and seizure of Plaintiff were not in violation of the Fourth Amendment any subsequent misconduct by Defendant is not relevant to the issue of the alleged constitutional violation.

For instance, having legally arrested Plaintiff on the outstanding warrant, then conducting a search incident to arrest which resulted in the seizure of the gun, the police were surely within their power to possess Plaintiff's vehicle and handgun, thereby defeating his claim of conversion contained in Count II.  In addition, Plaintiff as a convicted felon clearly had no right to possess the gun.  With respect to Count III, Defendant had probable cause based on the warrant to arrest Plaintiff at the time of the stop, therefore all false imprisonment claims relating to this stop must also fail.  It is further apparent that even had Defendant's false testimony not been considered in the issuance of a felony warrant for Plaintiff's arrest on the gun charge such a warrant would still likely have been issued based on the original arrest and subsequent discovery of the firearm, which Plaintiff, as a convicted felon, was not authorized to possess.  This clearly defeats Plaintiff's second claim of false imprisonment contained in Count IV.  Finally, the prosecution on felony gun charges could not

---

[2] Plaintiff's Counts III and IV claim § 1983 violations based on Plaintiff's Sixth Amendment Rights.  However, even assuming all of Defendant's alleged misconduct to be true, the Court fails to see how this behavior implicates Plaintiff's Sixth Amendment rights, namely the right to a speedy trial, the right to a jury trial, the right to confront witnesses against him and the right to counsel to assist in his defense.  *See* U.S. Const. amend VI.  Likewise, Plaintiff's petition contains a general claim for violations of Plaintiff's constitutional rights under the Eighth Amendment.  However, the fact that this violation is not mentioned specifically in any of Plaintiff's Counts I- V makes it impossible for the Court to determine what conduct, if any, rises to the level of cruel and unusual punishment. *See* U.S. Const. amend VIII.

Case 4:04-cv-00351-RED   Document 101   Filed 01/10/06   Page 11 of 18

possibly be malicious, because the legitimacy of the initial search and seizure of the handgun, in combination with Plaintiff's previous felony convictions, clearly established probable cause for the issuance of a felony warrant on gun possession charges. Although Defendant must have felt some need to embellish the facts with false statements there is nothing contained in the false statements that establish the elements of the gun charge or would even be relevant evidence at trial.

Therefore, the Court concludes that Defendant should further be **GRANTED** summary judgment as to Plaintiff's § 1983 claims in Counts II through V.

*B. Plaintiff's Pendant State Law Claims (Counts II - VI)*

In addition to Plaintiff's § 1983 claims, Counts II-VI of Plaintiff's petition also allege pendant state law tort claims for conversion, false imprisonment (two counts), malicious prosecution, and slander. Again, Plaintiff points primarily to Defendant's falsification of his police report and subsequent testimony that occurred *after* the initial stop, arrest, search and seizure were concluded as the basis for many of these pendant claims. However, the Court has already stated that while it does not endorse Defendant's behavior in this regard, it does not find that Defendant's conduct resulted in a constitutional violation because the initial stop, arrest, search and seizure were lawful. To wit, Plaintiff was arrested on a valid warrant, the handgun was discovered during a search incident to arrest and probable cause existed from which a subsequent felony warrant and arrest flowed. Therefore, to the extent that these claims originated with the original stop, they must be viewed from the Defendant's perspective as a police officer performing a discretionary act in making an initial arrest, and not from his subsequent behavior.

A police officer has an official immunity from liability for discretionary acts or functions performed in the exercise of his official duties. *Oberkramer v. City of Ellisville*, 6500 S.W. 2d 286,

-12-

295 (Mo. Ct. App. 1983). "A discretionary act is one that requires 'the exercise of reason in the adapt[at]ion of means to an end and discretion in determining how or whether an act should be done or a course pursued.'" *Miller v. Smith*, 921 S.W.2d 39, 45 (Mo.Ct.App. 1996) (internal citation omitted.) This doctrine was established to protect officers from second-guessing based on hindsight. *Costello v. City of Ellisville*, 921 S.W.2d 134, 136 (Mo. Ct. App. 1996). Deciding whether or not to arrest someone is a matter of discretion–the officer must decide what course should be pursued based on the circumstances at hand. But official immunity does not apply to discretionary acts done in bad faith or with malice. *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc. 1986). Because arresting someone is a discretionary act, the issue here is whether Defendant acted in bad faith or with malice, removing the protection of official immunity. Bad faith or malice requires actual intent to cause injury. *Twiehaus*, 706 S.W.2d at 447. It also embraces actual intent to mislead or deceive another. *Id.* (internal quotation marks and citations omitted). The official immunity defense can also be overcome by showing conscious wrongdoing. *Rozell v. Stiefermann*, 726 S.W.2d 342, 244 (Mo. Ct. App. 1987).

Here, summary judgment for Defendant is proper on Plaintiff's pendant state law tort claims for conversion, two counts of false imprisonment, and malicious prosecution because the facts in the record indicate that the initial stop, arrest, search and seizure were lawful. Based on the warrant, description of Plaintiff as armed and dangerous, and the undisputed observations, (i.e., car, license plate number and driver) made by Defendant, one would expect Plaintiff to be stopped, arrested, and searched; have his gun and car seized and be subject to prosecution on the warrant and gun charge. All of these actions would be justified without regard to any of Defendant's untruthful embellishments.

-13-

Plaintiff's Count II asserts that an action in conversion lies because Defendant, knowing his actions to be illegal, unlawfully took possession over a vehicle and handgun belonging to Plaintiff following his arrest on February 20, 2002. Plaintiff confuses untruthful embellishment after the fact with an alleged "knowing" by Defendant that the stop, arrest, search and seizure were unlawful. Since they were not illegal, there is no basis to claim the officer knew that they were illegal. Defendant properly points out that Plaintiff's claim to possession of the handgun is unfounded. It is not challenged by either party that Richardson had three prior felony convictions. Pursuant to 18 U.S.C. § 922(g)(1) convicted felons are prohibited from owning or possessing a firearm. Accordingly, Plaintiff has no right to possession of the handgun and his claim for conversion of the weapon must fail for this reason as well.

Unaddressed in Defendant's Motion for Summary Judgment is Plaintiff's claim for conversion of his vehicle. Here, Plaintiff also alleges his car was towed "in violation of the Police Department's tow policy." However, Plaintiff never moves beyond mere argument in making this claim and the record does not contain a copy of the Kansas City Police Department towing procedures. As such, it presents nothing to be considered by the Court. The Court further notes that whether or not towing procedures were followed is not the relevant issue. The bottom line is simply whether or not the Police had probable cause to seize the vehicle. As stated above the Court has found that the stop, arrest, search and seizure were legal. One would fully expect an officer, faced with these circumstances, to act in much the same way Defendant did (not including the false embellishment), first by searching the car for weapons, and additionally, by impounding the arrestee's car, particularly if the stop occurred on a city street as the facts here indicate. Clearly, all of Defendant's actions involving the possession of the gun and the vehicle would be considered

discretionary acts on the part of Defendant. Furthermore, it does not appear that at that time the decision to impound the car and gun were made that Defendant acted with bad faith or malice. Accordingly, Defendant's Count II for conversion of the vehicle must also fail.

Similarly, Defendant's claims of false imprisonment and malicious prosecution, contained in Counts III, IV and V must also be discounted based on the facts before the Court. Here, it is clear that probable cause existed both for Plaintiff's initial arrest on the common assault charge and his subsequent felony arrest on the gun charge. Missouri Courts have consistently held that probable cause acts as a complete defense to claims of false imprisonment/arrest[3], and malicious prosecution. *See Kurtz v. City of Shrewsbury*, 245 F.3d 753, 757 (8th Cir. 2001) ("A police officer who has probable cause to believe that a suspect has committed a crime is not liable for the state law tort of false arrest simply because the suspect is later proven innocent or the charges are dismissed"); *Police Retirement System of St. Louis v. Mummert*, 875 S.W.2d 553, 555 (Mo. 1994) (holding that to maintain a claim for malicious prosecution, plaintiff must show that probable cause was lacking). One must remember that Plaintiff has admitted undisputed facts that would fully support his conviction for being a felon in possession of a firearm. The gun charge was not dismissed on the merits, but rather was dismissed because of the misconduct of Defendant in regard to his false reporting of the surrounding circumstances not the elements of the gun charge. Therefore, Plaintiff's Counts III, IV and V may not stand.

Plaintiff's only remaining count unrelated to the initial stop and arrest on February 20, 2002,

---

[3] Although the cases cited by the Court state the law with respect to false arrest as opposed to false imprisonment, many courts find these two charges to be indistinguishable. *See* 32 Am. Jur. 2d *False Imprisonment* § 3 (2005). Indeed, Plaintiff's Counts III and IV appear to focus as much around Plaintiff's two arrests as they do on the subsequent imprisonment.

Case 4:04-cv-00351-RED   Document 101   Filed 01/10/06   Page 15 of 18

is Plaintiff's Count VI for Slander. Plaintiff asserts that Defendant committed slander by including false statements in his police report and providing false testimony about Plaintiff's behavior on the afternoon of February 20, 2002. These statements were then published to the public as well as several officers of the Court, damaging Plaintiff's reputation in the process.

The Court first addresses Plaintiff's claim of slander as it pertains to Defendant's false police report. Historically, such a claim would have failed because the tort of slander required the utterance of spoken words. *See Riss v. Anderson*, 304 F.2d 188 (Mo. Ct. App. 1962). Liability for written communications properly lied in an action for libel. *Nazeri v. Mo. Valley Coll.* 860 S.W.2d 303, 313 (Mo. 1993). However, the modern trend is to treat both written and oral communications under the single tort of defamation. *Nazeri,* 860 S.W.2d at 313. Here, even liberally construing Plaintiff's slander claim as a general defamation claim, the court is unaware of any case law in Missouri that supports an action in defamation against a police officer for including known false statements in his police report. The issue is further complicated by the fact the false statements were in the nature of embellishment of surrounding circumstances and were not relevant to the two charges that were considered for prosecution of Defendant. If this claim was to be pursued in this Court it would require additional briefing on this particular issue. This will not be necessary in light of the other rulings herein. Since the only remaining claim pending in this Court is Plaintiff's common law slander claim based on false statements in the police report, this Court chooses to not exercise supplemental jurisdiction over this purely state law claim. *See* 28 U.S.C. § 1367(c)(1). Accordingly, Plaintiff's slander claim as it pertains to the false police report should be **DISMISSED without prejudice**.

With respect to Plaintiff's remaining claims of Slander for statements made by Defendant

-16-

during the suppression hearing and other proceedings, the Court notes that Missouri courts adhere to the common law principle that "statements made during the proceeding of a judicial or quasi-judicial body are absolutely privileged if they are relevant to the issues before the body." *Remington v. Wal-Mart Stores, Inc.,* 817 S.W.2d 571, 574 (Mo. Ct. App.1991) (citations omitted). *See also Pulliam v. Bond*, 406 S.W.2d 635 (Mo. 1966)*; Hester v. Barnett*, 723 S.W.2d 544 (Mo. Ct. App. 1987). Absolute immunity as to defamatory publications is confined to the few situations "where there is an obvious policy in favor of permitting complete freedom of expression, without any inquiry as to the defendant's motives." *Hester,* 723 S.W.2d 557 (quoting W. Prosser, *Law of Torts* § 114 (4th ed. 1971)). Absolute immunity for participants in a judicial or quasi-judicial process is "necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz v. Economou,* 428 U.S. 478, 512 (1978). Absolute witness immunity extends even to false statements made by police officers. *See Briscoe v. LaHue*, 460 U.S. 325, 341-42 (1983) (rejecting a proposed immunity exception in cases of alleged perjury by police officers).

Excluding the police report, both of Plaintiff's claims for slander stem from Defendant's false testimony at Plaintiff's preliminary and suppression hearings during his state prosecution for felony gun charges. Therefore, there is no doubt that Defendant's testimony, reprehensible as it may be, occurred during a judicial proceeding and is entitled to absolute immunity. It is irrelevant to this analysis that Defendant's testimony was false.

In that regard, adequate safeguards exist to ensure that absolute immunity from defamation liability is not abused. All witnesses who testify are subject to the oversight of a judicial officer who may reprimand or fine the witness as well as suppress any statements that exceed proper bounds.

-17-

Furthermore, a witness who testifies under oath is subject to prosecution for perjury. Here, Plaintiff received relief from these very safeguards by having the pending felony gun charges against him dismissed upon discovery of the falsified testimony. However, because Defendant's testimony is absolutely privileged, Plaintiff's Count VI for slander based on the false testimony must fail.

Having duly considered each of Plaintiff's Pendant State Law claims, the court finds no genuine issue of material fact related to Counts II - V. Accordingly, summary judgment in favor of Defendant on all of Plaintiff's state law claims contained in Counts II - V therein is due to be **GRANTED.** Defendant is further due to be **GRANTED** summary judgment on Plaintiff's Count VI (Slander) for Defendant's in-court testimony. Plaintiff's slander claim for Defendant's inclusion of false statements in his police report is **DISMISSED without prejudice.**

### III. Conclusion

For all the aforementioned reasons, it is hereby:

ORDERED that Defendant Chirnside's Motion for Summary Judgment (Doc. 84) is due to be **GRANTED** on all of Plaintiff's 42 U.S.C. § 1983 and his pendant state law claims contained in Counts I - V. With respect to Plaintiff's Count VI, Defendant's motion for summary judgment as it pertains to Defendant's in-court testimony is **GRANTED**, and Plaintiff's claim for slander contained in the police report is **DISMISSED without prejudice.** As this case is dispositive of all remaining claims against Defendant, all other pending motions are hereby **DISMISSED as moot.**

**IT IS SO ORDERED.**

DATE:     January 10, 2006          */s/ Richard E. Dorr*
                                    RICHARD E. DORR, JUDGE
                                    UNITED STATES DISTRICT COURT